UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER M.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No.  25-cv-04533-AMO

**ORDER RE SOCIAL SECURITY APPEAL**

Re: Dkt. No. 14

Plaintiff seeks social security benefits for physical and mental impairments including: depressive disorder, joint pain from gunshot wounds, chronic post-traumatic stress disorder, unspecified anxiety disorder with panic attacks, and neurocognitive disorder.[1]  Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals a final decision by the Commissioner of Social Security determining he is not disabled under Section 1614(a)(3)(A) of the Social Security Act.  Plaintiff asserts the administrative law judge committed reversible error by: 1) failing to reasonably evaluate the persuasiveness of medical opinions in the Plaintiff's record; 2) unreasonably discounting Plaintiff's subjective symptom testimony; 3) failing to provide substantial evidence to support the step three determination; and 4) failing to provide substantial evidence to support the Residual Functional Capacity finding.

Having considered the parties' submissions, the Court concludes the matter is fit for resolution without oral argument, *see* N.D. Cal. Civ. L.R. 7-1(b), and **REVERSES** the Commissioner's decision.  The matter is **REMANDED** for further proceedings.

---

[1] The Court partially redacts Plaintiff's name to mitigate privacy concerns, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See, e.g.*, *Heather L. v. Saul*, No. 19-CV-02483-SI, 2020 WL 3504468, at *17 (N.D. Cal. June 29, 2020).

United States District Court
Northern District of California

**PROCEDURAL HISTORY**

On February 16, 2022, Plaintiff filed an application for supplemental security income, alleging disability beginning January 1, 2022.  Administrative Record ("A.R.") at 17.  The claim was initially denied on July 25, 2022.  *Id*.  Upon reconsideration, the claim was once again denied on April 21, 2023.  *Id*.  Subsequently, Plaintiff filed a request for a hearing, which was held with an administrative law judge ("ALJ") telephonically on May 2, 2024.  *Id*.  The ALJ issued an unfavorable decision finding Plaintiff was not disabled within the meaning of the Social Security Act on May 26, 2024.  Plaintiff filed the instant appeal from that decision on May 29, 2025.  Dkt. No. 1.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if they meet two requirements.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment, or impairments, must be severe enough that the claimant is unable to do their previous work and cannot, based on their age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 423(d)(2)(A).  To determine whether a claimant is disabled, an ALJ must employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's Residual Functional Capacity ("RFC"), they can still do their "past relevant work"; and (5) whether the claimant "can make an adjustment to other work."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 404.1520(a).

On appeal, the Court must "consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotations omitted). "If the evidence can reasonably support either affirming or reversing the Commissioner's decision, [the Court] may not substitute its judgment for that of the Commissioner." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the [Court] will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and quotation marks omitted).

## DISCUSSION

The Court first addresses the ALJ's basis for adjudging the persuasiveness of medical reports prepared by Darya Harrison, Psy.D., and Dr. Katherine Wiebe. Then, the Court considers the ALJ's credibility determination as to Plaintiff's subjective symptom statements. Finding basis for reversal, the Court does not address the parties' arguments as to the ALJ's step-three analysis and RFC finding.

## I.      MEDICAL OPINION EVIDENCE

When evaluating medical opinion evidence in a benefits claim, the Commissioner determines the "persuasiveness" of that evidence based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(5); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

"Supportability" and "consistency" are the most important factors in evaluating the persuasiveness of medical opinions. *See* 20 C.F.R. § 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *See id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id*. § 416.920c(c)(2). The ALJ must explain how they considered supportability and consistency, and may, but is not required, to explain how they considered factors three, four, and

3

five. *See Woods*, 32 F.4th at 792; *see also* 20 C.F.R. § 416.920c(b)(2).

Further, the "ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792 (cleaned up). This standard requires "'more than a mere scintilla' but only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. at 788. So, "[t]he agency must articulate how persuasive it finds all of the medical opinions and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792 (cleaned up).

Plaintiff challenges the Commissioner's persuasiveness determinations as to the opinions of two medical professionals: Darya Harrison, Psy.D., who evaluated Plaintiff on October 17, 2023, A.R. at 527; and Dr. Katherine Wiebe, who evaluated Plaintiff on January 9, 2024, *id*. at 582.

### A.    Darya Harrison, Psy.D.

Prior to determining the persuasiveness of Harrison's opinion, the ALJ summarized her report as follows:

> On October 17, 2023, claimant was seen for a consultative psychological examination. He complained of anxiety with shortness of breath, heart palpitations, difficulty breathing, racing thoughts, a sense of impending doom, social avoidance, paranoid thoughts, and thoughts someone is after him. He often thinks people are "trying to shoot me" and people are recording him on the phone. He reported that he experiences panic attacks every day. He reported he feels as if someone is watching him. He reported symptoms of a psychotic disorder and reported attending counseling briefly, in 2019. He denied a history of psychiatric hospitalization. He denied a history of drug and alcohol treatment. ADL: He reported that he does not do his own shopping. He is able to drive himself to his appointments and to complete personal errands limited distances. He uses public transportation. He does chores but requires assistance in order to complete these tasks. His affect was constricted. His intellectual functioning appeared to be in the extremely low range and memory appeared to be markedly impaired, based on memory tasks.
>
> He was diagnosed with intellectual disability mild; generalized anxiety disorder; and unspecified schizophrenia psychotic disorder. The medical source statement shows a markedly limited complex, otherwise mild to moderate impairments. Claimant tested with a low FSIQ, with adequate capability of preforming [*sic*] ADLS. Capable of driving himself to his appointments and to complete personal errands, complete chores, and capable of basic activities of daily

4

living . . . .

A.R. at 22-23.  From this reading of the evidence, the ALJ found the opinion "somewhat persuasive" because "the objective and other evidence does not support the presence of a severe psychotic disorder and claimant later denied symptoms of psychosis." *Id*. at 23.  Here, the ALJ's supportability explanation was not based on substantial evidence.

To begin, the ALJ's summation of Harrison's report includes certain errors.  Per the report, Plaintiff does not use public transportation, *id*. at 529, his FSIQ score was in the extremely low range, *id*. at 532, and he is capable of completing Activities of Daily Living (ADLs) with assistance from his mother, *id*. at 529.  Further, the ALJ only remarked on Harrison's diagnosis of a psychotic disorder (schizophrenia spectrum disorder or other psychotic disorder), when assessing whether the medical opinion was adequately supported.  *Id*. at 23.  The analysis amounts to a lone sentence: "the objective and other evidence does not support the presence of a severe psychotic disorder and claimant later denied symptoms of psychosis." *Id*.  This limited statement appears to go to the "consistency" factor, leaving the ALJ's decision silent on supportability. Indeed, the ALJ did not consider how Harrison relied on the "objective medical evidence" in reaching her diagnosis of a psychotic disorder, mild intellectual disability, or generalized anxiety disorder, let alone how she applied that evidence in assessing Plaintiff's level of impairment.  *See* 20 C.F.R. § 416.920c(c)(1).  Absent a supportability analysis, Harrison's potentially dubious conclusion of moderate impairment—despite Plaintiff testing in the extremely low or extremely impaired range on the Wechsler Adult Intelligence Scale, Wechsler Memory Scale, and Trail Making Test (Parts A and B)—goes unexamined.

Accordingly, the ALJ's persuasiveness determination as to Harrison's report was not supported by substantial evidence.

### B.    Dr. Katherine Wiebe

As for Dr. Katherine Wiebe's evaluation, the ALJ found her report "not persuasive" since it was "not consistent with the overall record and based mainly in claimant's subjective reports of his limitations." A.R. at 23.  "Statements made to other providers also contradict[ed] statements claimant made to [Dr. Wiebe], which render[ed] [her opinion] less persuasive." *Id*.  Here, too, the

United States District Court
Northern District of California

United States District Court
Northern District of California

ALJ's conclusion on persuasiveness was not supported by substantial evidence.

As for supportability, the ALJ identified Dr. Wiebe's reliance on Plaintiff's "subjective reports" of limitations to discount Dr. Wiebe's opinion. *Id.* However, the ALJ's decision failed to account for the eleven procedures Dr. Wiebe administered in her evaluation, and her reliance on those results: (1) Clinical Interview; (2) Mental Status/Psychiatric Symptoms Sheet; (3) Barona Estimate (IQ); (4) Repeatable Battery for the Assessment of Neuropsychological Status (RBANS)-Form A: Immediate Memory Index, Digit Span task from Attention Index, and Language Semantic; (5) Fluency Task; (6) Montréal Cognitive Assessment (MoCA), telephonic version; (7) Beck Depression Inventory II (BDI-II); (8) Beck Anxiety Inventory (BAI); (9) Posttraumatic checklist for DSM-5 (PCL 5); (10) Symptom Checklist 90-R (SCL-90); (11) Collateral interview with Plaintiff's mother for 15 minutes following his evaluation. To the extent the ALJ discredited Plaintiff's answers to any of the questions posed by Dr. Wiebe in her evaluation, the Court addresses that credibility analysis in the subsequent section.

On consistency, the ALJ asserts Plaintiff made statements to Dr. Wiebe that were contradicted by his statements to other healthcare providers. To support this conclusion, the ALJ identifies only one inconsistency in his summation of Dr. Wiebe's report: Plaintiff stated he never had a job, when his hearing testimony and his consultation with Harrison indicated he had previously worked in janitorial services at a zoo. *Id.* at 23, 36, 529. This single moment of inconsistency in the record does not constitute "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion that the entirety of Dr. Wiebe's analysis is unpersuasive. *See Woods*, 32 F.4th at 788. And even as to that single inconsistency, the ALJ failed to consider how Plaintiff's extremely low FSIQ and extremely impaired memory could explain any inconsistent recall or report of prior events. Ultimately, the ALJ's persuasiveness conclusion relies on a summary of the record with minimal analysis of that record.

For these reasons, the ALJ's finding as to Dr. Wiebe's medical opinion was not supported by substantial evidence.

* * *

The Court further finds the ALJ's persuasiveness analysis does not constitute harmless

error. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). As the Harrison and Wiebe opinions were the primary evaluations of Plaintiff's psychiatric health, they were essential to the ALJ's adverse determination. Had the ALJ not erred in performing the persuasiveness analysis, he could have reasonably come to a different conclusion as to the step three and RFC findings.

## II.    PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY

The Court now reviews the ALJ's analysis of Plaintiff's testimony regarding the severity of his impairments.

"[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991) (en banc)). Should the ALJ determine the claimant's symptom testimony is not credible, they "'must specifically make findings that support [the] conclusion,' and the findings 'must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] testimony.'" *Id.* at 856-57. (citation omitted). Absent affirmative evidence of malingering, "the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms." *Id*. at 857 (citing *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998)).

Turning to the instant case, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." A.R. at 22. However, as to Plaintiff's subjective testimony about those symptoms, the ALJ found the "statements concerning the intensity, persistence and limiting effects of [the] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." *Id*. Though the ALJ determined Plaintiff's "symptoms do adversely impact his ability to persist in some work settings, the alleged severity [was] not supported." *Id*. at 24. The ALJ's analysis proceeds, broadly, in two

United States District Court
Northern District of California

7

parts. First, the ALJ addressed inconsistencies in Plaintiff's statements throughout the record, and second, he surveyed Plaintiff's medical history. *Id*. at 22-24. The Court discussed the errors in the ALJ's persuasiveness assessments when surveying Plaintiff's medical evidence, previously. *See* Section I.A. – I.B., *supra*. So, the Court now considers the ALJ's reasoning as to the asserted inconsistencies in the record. Ultimately, in rejecting the credibility of Plaintiff's subjective symptom testimony, the ALJ did not offer "clear and convincing reasons" supported by substantial evidence. *Rollins*, 261 F.3d at 857.

The ALJ laid out the inconsistencies supporting his credibility finding as follows:

> Claimant's hearing testimony conflicted with the statements made to treating and examining providers, likewise, claimant alleges he was never arrested or jailed when the record shows otherwise. Claimant stated that he does not have a driver's license but drove his mother's car at least five months prior to the hearing. The record shows that he reported driving regularly. He stated that he does not spend time with anyone outside of his home, when the record is replete with evidence of him having a girlfriend who he spends time with outside of his home.

A.R. at 22. To start, two of these inconsistencies are misidentified. At the hearing, Plaintiff stated he did not have a girlfriend. *Id*. at 44. Though the ALJ stated the record is "replete with evidence of [Plaintiff] having a girlfriend, who he spends time with outside of his home," the ALJ did not specifically identify any such evidence. As far as the Court can discern, the record indicates Plaintiff had a girlfriend on December 19, 2023, *id*. at 542, but no longer was in any relationship as of January 9, 2024, *id*. at 583. Even so, this relationship history pre-dated the hearing and does not indicate Plaintiff was being untruthful or inconsistent in responding to the ALJ's questioning. As for Plaintiff's driving record, he indeed stated he did not have a driver's license, but also that he had driven within the previous months. *Id*. at 37. Yet, upon further prompting from the ALJ, it became clear Plaintiff had a learner's permit, not a license, and drove with his mother. *Id*. at 37-38. This portion of the hearing seems marked by miscommunication, as Plaintiff initially testified he did not drive, but when the ALJ asked a second time immediately thereafter, Plaintiff stated he drives his mother's car. *Id*. at 37.

Ultimately, these perceived inconsistencies speak to a broader issue with the ALJ's reasoning—the decision fails to consider how Plaintiff's extremely low FSIQ and extremely

8

United States District Court
Northern District of California

impaired recall abilities impacted his testimony. For example, the ALJ mentioned an instance of police contact in Plaintiff's medical record, which Plaintiff denied. *Id*. at 44-45. This incident involved a 5150 involuntary psychiatric hold in which Plaintiff had expressed suicidal ideations. *Id*. at 542. The ALJ cites Plaintiff's denial of police contact as another inconsistency, yet asked about the encounter only once during the hearing. As evinced by the prior exchange involving Plaintiff's driving record, it is apparent that asking a question multiple ways yielded varying degrees of clarity from Plaintiff. Though the ALJ does not explain how these factual inconsistencies bear on Plaintiff's symptoms, he relies on them to discount Plaintiff's testimony, while ignoring the record evidence demonstrating Plaintiff's challenges answering basic questions and recalling basic facts. Rather than consider the entirety of the record, including the results of Plaintiff's memory and FSIQ tests, the ALJ impermissibly cherry-picked certain inconsistencies to justify rejecting Plaintiff's subjective reporting of his symptoms. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding error when the ALJ's decision did not account for the record "as a whole," but rather relied on "cherry picked" evidence); *Williams v. Colvin*, No. 14-cv-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (cleaned up) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.").

Accordingly, the Court finds the ALJ's decision to discredit Plaintiff's subjective symptom testimony was not supported by clear and convincing reasons.

## III.    REMAND

When a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal citations omitted). Remand for further proceedings is warranted here so the ALJ can provide an analysis of Harrison's and Dr. Wiebe's medical reports that accounts for both supportability and consistency. Additionally, the ALJ shall reconsider the credibility of Plaintiff's subjective report of symptom severity after accounting for the record as a whole.

The Court does not address the ALJ's step-three analysis nor his RFC finding. However,

because both analyses relied on an assessment of the medical evidence and Plaintiff's severity testimony, the ALJ shall reconsider either finding to the extent it is impacted by further proceedings consistent with this Order.

## CONCLUSION

Based on the foregoing, the Court **REVERSES** the ALJ's decision and **REMANDS** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: March 27, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

10